```
                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF INDIANA
                        INDIANAPOLIS DIVISION


UNITED STATES OF AMERICA,       )
                                ) Cause No.
        Plaintiff,              ) 1:19-cr-0096-TWP-DLP-01
                                ) Indianapolis, Indiana
    vs.                         ) November 9, 2021
                                ) 9:12 a.m.
MATTHEW COLE,                   )
                                )          EXCERPT
        Defendant.              )
```

**Before the Honorable
TANYA WALTON PRATT**

OFFICIAL REPORTER'S TRANSCRIPT OF
REDACTED EXCERPT OF PLEA AND SENTENCING


**For Plaintiff:**              Bradley Paul Shepard, Esq.
                                Kristina M. Korobov, Esq.
                                Assistant U.S. Attorneys
                                Suite 2100
                                10 West Market Street
                                Indianapolis, IN  46204

**For Defendant:**              Gwendolyn Beitz, Esq.
                                Indiana Federal
                                 Community Defenders
                                111 Monument Circle, Suite 3200
                                Indianapolis, Indiana  46204




Court Reporter:                 David W. Moxley, RMR, CRR, CMRS
                                United States District Court
                                46 East Ohio Street, Room 340
                                Indianapolis, Indiana  46204

         PROCEEDINGS TAKEN BY MACHINE SHORTHAND
    TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

(In open court.)

\* \* \*

E X C E R P T

\* \* \*

MR. SHEPARD:  I did want to bring up Timothy Poteat, because we do think that that is similar.  That cause number was with this Court, it was 1:16-cr-273.  Mr. Poteat was 43 years old, he did have a different background, but he victimized his daughter.  That abuse started when she was about seven, and it proceeded for five years.  It included multiple acts of sexual intercourse, multiple images were created. Those images were shared with other like-minded individuals. There was obstructive behavior, and that obstructive behavior allowed him to retain custody of the daughter and to continue the abuse.

Now, if we turn to Mr. Cole's, yes, he did not have the advantages that Mr. Poteat had, and he was younger. Mr. Cole was -- or is 31 at the time he's in front of the Court.  But, instead of one victim, he had six.  Those are his relations, either his stepchildren or his children.  The abuse wasn't five years, it was 10 years.  He created images, just as did Mr. Poteat.  He distributed the images, just as Mr. Poteat.  He engaged in destructive behavior as to the victims, which allowed the abuse to continue, just as did Mr. Poteat.

Now, thankfully, ▓▓▓▓▓▓▓ is now 17, and through her therapy she was adopted. She's an A-B student and she's doing well, about to welcome in a baby sister into her adoptive home. The harm here is much, much worse than what happened to ▓▓.

* * *

(Recess at 10:11, until 10:14.)

THE COURT: All right, the Court is prepared to state what the sentence in this case will be. And, Counsel, you will each have a final opportunity to state any legal objections before sentence is finally imposed.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Matthew Cole, is hereby committed to the custody of the Bureau of Prisons for a term of 500 months on Count 1 and a term of 240 months on each of Counts 5 and 7, all to be served concurrently, to produce a total sentence of 500 months. The sentence as to Count 1 is a variance consistent with the terms of the binding plea agreement. The Court also believes that it avoids any unwarranted disparities with Mr. Poteat.

Due to the order of restitution and the fact that the defendant is indigent, the Court is not ordering a fine for the Justice for Victims of Trafficking Act of 2015 assessment.

The defendant shall make restitution of $10,000 to each of minor Victims 1 through 5, for a total of $50,000.

1   Restitution is due immediately.  Any payment made that is not
2   payment in full shall be divided proportionately among the
3   defendants named.  The payment is to be made directly to the
4   Clerk, United States District Court, for disbursement to the
5   victims.
6          The defendant shall notify the United States Attorney
7   for this district within 30 days of any change of mailing or
8   residence that occurs while any portion of the restitution
9   remains unpaid.  Any unpaid restitution balance shall be paid
10  during the term of supervision at a rate of not less than
11  10 percent of the defendant's gross monthly income.  The
12  defendant shall notify his probation officer of any material
13  change in economic circumstances that might affect the ability
14  to pay restitution.  The Court finds that the defendant does
15  not have the ability to pay interest and waives the interest
16  requirement.
17         Supervised release is required by statute for Counts 1
18  and 7, and the Court is imposing terms of lifetime supervision
19  for each of Counts 1 and 7 and three years for Count 5, to be
20  served concurrently and produce a total term of life based on
21  the nature of the offense, the defendant's personal history and
22  characteristics, the need to protect the public, as well as to
23  assist the defendant in his reentry.
24         While on supervised release, the defendant shall not
25  commit another federal, state, or local crime; he shall

1   cooperate with the collection of a DNA sample; refrain from any
2   unlawful use of a controlled substance; and submit to one drug
3   test within 15 days of placement on supervised release and at
4   least two periodic tests thereafter as directed by his
5   probation officer.
6           The defendant shall comply with the requirements of
7   the Sex Offender Registration and Notification Act as directed
8   by the probation officer.  Further, the defendant shall comply
9   with the additional conditions which are listed in the
10  Presentence Report.  And, Ms. Beitz, have you and your client
11  reviewed those additional conditions?
12          MS. BEITZ:  We have, Your Honor.
13          THE COURT:  Any objection to any of those conditions?
14          MS. BEITZ:  No objection.
15          THE COURT:  And since you and your client have
16  reviewed them and you do not object to any, would you waive the
17  Court reading them into the record?
18          THE DEFENDANT:  Yes, ma'am.
19          THE COURT:  All right.  Thank you.
20          Mr. Shepard, have you reviewed those conditions?
21          MR. SHEPARD:  We have reviewed them, Your Honor, and
22  we would waive a reading.
23          THE COURT:  All right.  And you do not object to any
24  of these additional --
25          MR. SHEPARD:  No objections, Your Honor.

1           THE COURT:  Mr. Cole, I'm going to order all these
2   additional conditions of supervised release.  A majority of
3   these conditions are just administrative requirements of being
4   on supervised release.  Some of these conditions are going to
5   reduce the risk of recidivism and provide for public safety.
6   We're going to address your history of methamphetamine use and
7   ensure that you get adequate treatment for your mental health
8   conditions, as well as sex offender treatment.
9           The Court is also going to order that you pay a
10  mandatory special assessment fee of $300, which is due
11  immediately.
12          The sentence that the Court intends to impose is a
13  downward variance from the applicable guideline range,
14  consistent with the binding plea agreement and based upon the
15  3553(a) factors.  In particular, the Court has considered the
16  awful, perverse nature and circumstances of these offenses,
17  your criminal conviction, your characteristics, the need for
18  the sentence to reflect the very seriousness of the offense, to
19  promote respect for the law, provide just punishment and
20  adequate deterrence to criminal conduct of this nature by
21  others who might try to do similar things, to provide you with
22  lengthy time to get the treatment that you need, and to avoid
23  unwarranted disparity with similarly charged sex offenders,
24  such as Mr. Poteat.
25          Mr. Cole is a 31-year-old man before the Court for

sentencing for conspiring with his wife, Dolores Cole, to transport his minor children and stepchildren around the country with intent to engage in criminal sexual activity, he conspired to tamper with a witness, and for his actual sexual exploitation of those six minor children.

Mr. Cole engaged in incestuous relationships with his children, and so did Dolores Cole, for their sexual gratification. The defendant's sexual conduct, we know, lasted for seven to nine years. His actions, as we all admit, are unconscionable. He has ruined the lives of these children, and the just punishment of a very large sentence is necessary. The abuse that these children suffered was long, so long and so prevalent, that they view the abuse as normal, which has been a major hurdle in their recovery.

Regarding his history and characteristics, Mr. Cole did endure a horrific childhood himself. He was born into the marital union of his parents, who divorced when he was a toddler. Thereafter, he was raised by his mother and maternal grandparents, during which he was emotionally, physically, and sexually abused. He was raised in poverty, he moved often. His basic needs were often not met. The defendant was physically and emotionally abused by his biological mother.

Despite that, he reports that he loves his mother, despite the fact that she was so abusive to both, the defendant and his brother. The defendant's mother would lock him in a

room and deprived him of social interactions of school, church, making friends. And he's not had contact with his mother since 2017, although she did write a letter in his support, which has been docketed.

Mr. Cole was not allowed to know or see his father, and he did not meet his father until -- again, until he was 18 years old. He reports that his father is supportive, nonjudgmental, and they now have a good relationship.

The defendant reports being sexually molested by an uncle when he was four years old, and that abuse lasted for up to one year. We believe that uncle was prosecuted and sent to prison.

Because his mother kept him out of school as a punishment, the defendant enrolled only through the sixth grade. He did not -- but he did, to his credit, obtain a GED while at Grayson, which is a very good thing.

Mr. Cole turned to marijuana and methamphetamine, probably as a coping mechanism, and abused both drugs from the age of 16 to 19 when he met his co-defendant and wife. He says he stopped abusing drugs at that time. Mr. Cole and his wife participated in very horrible crimes against her two biological children and three of the defendant's four biological children.

Regarding his mental health, Mr. Cole suffers from anxiety and depression. He has attempted suicide on several occasions, the latest being during the pendency of this case,

1  when he jumped over the second story tier of the Monroe County
2  Jail. Rather than seeking treatment for his mental health
3  issues and addressing the trauma he experienced during his
4  childhood, unfortunately, Mr. Cole perpetrated those similar
5  acts.
6        The Court has considered the relevant factors
7  presented by the defendant and given them the appropriate
8  weight. The Court recognizes that, to his credit -- this is a
9  big one -- he did sign over his parental rights so that those
10 children could move on. He obtained his GED certificate in
11 February of last year. He cooperated with the government, who,
12 in exchange, recommended a sentence of not greater than 50
13 years. The guideline for Mr. Cole is life.
14       The defendant appears to be sincere in his quest for
15 treatment. He's aware of the harm that he's caused those
16 children. However, the seriousness of this offense cannot be
17 overstated. Child sex crimes are one of the most egregious and
18 despicable of societal and criminal offenses, and Congress has
19 called for serious punishment for persons who knowingly
20 victimize children.
21       The Court considers the need to protect the public
22 from further crimes of this defendant and to afford adequate
23 deterrence to others who might commit these same types of
24 crimes. The defendant and his wife sexually molested their
25 children for years. He spoke poorly about the things that his

1  mother and grandmother did to him, yet he treated his own
2  children no better.  He sexually abused them, moved from --
3  around the country to several states, banned them from speaking
4  with authorities.  These children were like sex slaves, and he
5  did everything he could to keep it that way.
6          He subjected them to the same tortures that he
7  experienced as a child.  He took their childhood from them, he
8  committed unthinkable, despicable acts against them, and for
9  this he will spend probably most of his life in prison.  The
10 children will spend the rest of their lives coping with this
11 abuse.
12         Mrs. Cole, Dolores Cole, is not a comparable person
13 for the Court to judge disparity simply because she did not
14 plead to Count 1.  And for whatever reason the Court -- the
15 government chose -- or maybe they couldn't negotiate a plea
16 agreement, with her pleading to Count 1.  She probably -- I
17 don't know.  The Court was not aware of a lot of things that I
18 heard for the first time today, that Ms. Cole participated in.
19         And I know you don't -- you're not privy, Ms. Beitz,
20 to her Presentence Investigation Report.  The probation officer
21 didn't even know that she had had any sexual contact with her
22 children when the PSR was prepared, because she never admitted
23 it.  Even in her sentencing hearing, she has never admitted
24 that she had sexual contact with her children.  The only way
25 the Court got that information was from the victim assistance

1  people who had talked to the children and your client in his
2  allocutions and in his proffers, where he said that she
3  participated. But the kids would not admit it.
4          MS. BEITZ: They did, though. I understand the
5  Court --
6          THE COURT: But the Court didn't have that
7  information.
8          MS. BEITZ: Your Honor, it was docketed, at docket 1.
9  It's in the -- it's in the criminal complaint. It's in docket
10 1. It is on the docket. I understand the Court's position,
11 but I --
12         THE COURT: But the kids -- the Child Number 1 --
13 Minor Victim Number 1, backtracked. The government says that
14 they could not proceed -- that they do not believe they could
15 prevail with Minor Victim Number 1's testimony. So the
16 Court's only option would have been to reject her binding plea
17 agreement and make her go to trial, and the government did not
18 want that. They asked me not to do that. They asked me to
19 accept the binding plea agreement, and so the Court did.
20         But she did not plead to Count 1, so there's no
21 disparity in her case and her husband's case, there just is
22 not. She also had documented intellectual and cognitive
23 deficiencies. She's mildly mentally challenged and
24 handicapped, she suffers from diagnosed mental illness. So
25 she's a totally different person, so the Court is not

Case 1:19-cr-00096-TWP-DLP   Document 207   Filed 02/13/23   Page 12 of 15 PageID #: 1437

12

1  comparing -- the Court is not able to compare Dolores Cole with
2  Matthew Cole.  The Court is comparing Matthew Cole with
3  Mr. Poteat when the Court is looking at disparity.
4         Mr. Cole -- this is all about Mr. Cole today.  He
5  clearly knew what he was doing to these children was wrong.  He
6  knew the impact it would have on them, and he knew this because
7  he experienced some of these things himself.
8         Instead of sheltering and protecting his children, he
9  abused them sexually.  When he learned that he was being
10 investigated in each city, he moved them around so that he
11 could continue molesting them.  He did not express any empathy
12 or consideration for the well-being of his only children before
13 they were removed from his home.  And, thereafter, he did --
14 the Court acknowledges that, thereafter, he did cooperate with
15 authorities.
16        One of the goals of sentencing is to provide the
17 offender with correctional training through treatment and
18 abstaining from criminal behavior.  Due to the nature of the
19 offenses, it's necessary that the defendant participate in sex
20 offender treatment while in prison to assist in the development
21 of internal control so that he can avoid future deviant sexual
22 impulses, thoughts, and behaviors.
23        So, Counsel, those are the reasons the Court intends
24 to impose the stated sentence.  Ms. Beitz, do you know of any
25 reasons, other than those already argued, why sentence should

1    not be imposed as stated?

2             MS. BEITZ:  Unfortunately not, Your Honor.

3             THE COURT:  And, Mr. Shepard, does the government know

4    of any reasons, other than what's already been argued?

5             MR. SHEPARD:  No, Your Honor.

6             THE COURT:  The Court now imposes the sentence as

7    stated.

8             Mr. Cole, I'm going to give you your appellate rights.

9    Sir, you do have a right to appeal your conviction if you

10   believe your guilty plea was somehow unlawful or involuntary or

11   if there's some other fundamental defect in the proceedings

12   that was not waived by your guilty plea.  You also have a right

13   to appeal your sentence if you believe it is contrary to law.

14            With few exceptions, any notice of appeal must be

15   filed within 14 days after written judgment is entered in your

16   case.  If you cannot afford the filing fee or cannot afford to

17   pay a lawyer to appeal for you, a lawyer would be appointed to

18   represent you in an appeal.  If you intend to appeal, you have

19   to let Ms. Beitz know within 14 days, and she'll get a notice

20   of appeal prepared for you.  Do you understand your appellate

21   rights?

22            THE DEFENDANT:  Can I have one second to ask my

23   attorney a question?

24            THE COURT:  Sure.

25         (Off the record.)

1        THE DEFENDANT: Yes, ma'am, I understand.
2        THE COURT: Okay. All right. The Court now imposes
3   the sentence as stated.
4        Government, are there any other matters? Are there
5   any counts to dismiss?
6        MR. SHEPARD: Your Honor, we would dismiss Count 2,
7   Count 6, Count 8, Count 9, and Count 10.
8        THE COURT: 2, 6, 8, 9, and 10. And, Counsel, will
9   you follow up with a written motion and an order?
10       MR. SHEPARD: Yes, Your Honor.
11       THE COURT: Okay. And the Court will dismiss those
12  counts. Any other matters for the government?
13       MR. SHEPARD: No, Your Honor.
14       THE COURT: Ms. Beitz, any recommendations?
15       MS. BEITZ: No, Your Honor.
16       THE COURT: Okay. All right. We are adjourned and
17  the defendant is remanded to the custody of the United States
18  Marshal.
19       THE COURTROOM DEPUTY: All rise.
20       THE COURT: Good luck, Mr. Cole.
21       THE DEFENDANT: Thank you.
22     (Proceedings adjourned at 10:32 a.m.)
23
24
25

## CERTIFICATE OF COURT REPORTER

I, David W. Moxley, hereby certify that the foregoing is a true and correct copy of the transcript originally filed with the clerk of court on November 14, 2022, and incorporating redactions of personal identifiers requested by the following attorney of record: Bradley P. Shepard, in accordance with Judicial Conference.  Redacted characters appear as blacked out in the transcript.

/S/ David W. Moxley                    February 13, 2023

DAVID W. MOXLEY, RMR/CRR/CMRS
Official Court Reporter
Southern District of Indiana
Indianapolis Division